## Green v. Ball.

(Decided November 16, 1926.)

### Appeal from Harlan Circuit Court.

1. Appeal and Error.—Ky. Stats., section 1596a-12, regulating appeals, leaves matter of cross-appeal to be governed by Code, and appellee may be allowed cross-appeal on record being filed in Court of Appeals.

2. Elections.—Evidence that officers' returns of votes cast were greatly in excess of number of voters who entered polls or of legal voters in precincts held to support judgment throwing out votes of precincts.

3. Officers.—Where 20 per cent. of total vote was thrown out as fraudulent, so that court could not determine with certainty who was elected, it was proper to declare office vacant.

4. Appeal and Error.—Question raised, the decision of which would have no effect on result of case, need not be considered by Court of Appeals.

LEE & SNYDER, J. S. FORESTER and MORRIS & JONES for appellant.

E. H. JOHNSON, R. L. POPE, LESLIE W. MORRIS and MARION RIDER for appellee.

Opinion of the Court by Commissioner Hobson—
Affirming on original and cross appeals.

James Green and Floyd Ball were opposing candidates for the office of sheriff of Harlan county at the November election, 1925. On the face of the returns Green received 7,019 votes and Ball 5,589. Green received the certificate of election and Ball filed a contest, charging, among other things, fraud, bribery and corruption in the four precincts at Lynch to such an extent that rendered the election therein void. Lynch is a mining town about thirty miles from the county seat, unincorporated and owned by the United States Coal and Coke Company. There are four precincts there. In these precincts Green received 2,483 votes and Ball 61. A large amount of proof was taken and on final hearing the learned circuit judge who heard the case delivered a written opinion, in which, among other things, he said this:

"About every election law upon the statute books was violated in the holding of the election in the Lynch precincts. The officers declined to permit challengers or inspectors in the precincts, except one, and the ballots themselves indicate that many of them were voted by the same person.

"Eliminating the Lynch precincts, a majority of the votes would have been cast in favor of the contestant, Floyd Ball, but Mr. Ball's friends, brothers and others associated closely with him spent, or caused to be spent, large sums of money, as shown by the record, and he should not be permitted to reap the benefits from an election thus obtained, and, as I understand the law, he cannot receive benefits of such an election.

"Many reasons could be given why both of the parties should fail in their efforts to be sheriff of Harlan county, as shown by this record. It is so apparent in the record that so many statutes have been violated that the court cannot reach any other conclusion than that the contestant must fail and that the contestee must fail, and that the office of sheriff of Harlan county be declared vacant."

Judgment was accordingly entered. Green appeals. When the record was filed in this court Ball, on his motion, was granted a cross-appeal. A motion has been entered to set aside this order and dismiss the cross-ap-

peal. Such proceedings are governed by section 1596a, subsection 12, Kentucky Statutes. But while the statute regulates specifically how the appeal shall be taken, it makes no provision as to a cross-appeal, and thus leaves the cross-appeal to be governed by the provisions of the Code. This has been the settled practice of the court. When the appellant brings the case here he cannot complain that the court renders a judgment which on the facts is correct. To refuse to allow a cross-appeal in such cases might result in requiring the court to enter a judgment not in accord with the justice of the case. The motion to dismiss the cross-appeal is, therefore, overruled.

This brings us to a consideration of the question whether the four precincts at Lynch, Nos. 21, 22, 23 and 24, were properly thrown out. The challengers, regularly appointed at each of these precincts, presented their credentials and three were refused admission. The election was held and the returns made without challengers or inspectors. In precinct 21 the challenger, after being driven from the polls, remained at the voting precinct and made an accurate count of all voters that entered the voting place and he swears that only 225 voters entered the voting place at this precinct. The returns of the officers show that Green received 661 votes at this precinct and Ball 6. In precinct 22 the challenger testified that he stayed there and counted the votes that came in up to ten minutes of one o'clock, and that only 41 voters came to the voting place up to the time. The returns of the officers showed that Green received 608 votes and Ball 1. It also shows that 612 votes were voted for the constitutional amendment and one against it. In precinct 23 Fred Venable swears that he remained there until 7:30 a. m. and only 8 voters had then entered the polls. Chad Pace says that he remained there and counted the voters from that time until 3:20 p. m. and during this time only 30 voters entered the voting place. The officers' returns from this precinct show 52 votes for Ball and 470 votes for Green. In precinct 24 the challenger did not remain at the polls and count the number of voters who came in. The report of the officers shows that 744 votes were counted for Green and 2 for Ball. There is also convincing evidence in the record that many persons whose names are recorded on the stub books did not vote; these stub books contain entries evidencing that fictitious names were written when no voter

had appeared. The proof also shows that the mines were in operation that day and tends to show that while Lynch has a larger population there are in fact there only about 1,000 legal voters, as a large percentage of the citizens are not residents of this state, or naturalized citizens. There are other facts in the record which need not here be recited, and on the whole case the conclusion of the circuit judge that only the form of an election was held in Lynch is abundantly supported by the evidence and these four precincts were properly thrown out.

It remains to determine, can Ball be adjudged to be elected? It is shown by the evidence that a few weeks before the election Ball and the man who was to be his chief deputy, if elected, applied to a bank in Harlan for the loan of $5,000.00 for election purposes. The bank declined to make the loan, but three days before the election Ball's brother went to another bank and borrowed $10,000.00, which at his request was paid to him in one dollar, two dollar and five dollar bills. It is not shown that this $10,000.00 was actually spent in the election, but there are many circumstances in the record pointing to a large expenditure of money in this election by Ball no less than by Green. Ball's brother, who borrowed the money, does not testify or explain what he did with this money. The borrowing of so much money in such small bills just on the eve of an election may warrant the presumption that it was borrowed for election purposes, where the borrower was the brother of the candidate and his partner in business. But it is unnecessary to decide whether the election should for this cause be adjudged void; for the vote of Lynch was over 20% of the total vote. There was much voting on the table for Ball in other precincts and many other votes were illegally cast; and when so large a vote is thrown out, the court cannot with any certainty determine who is elected; for Ball's apparent majority would only be about 400. On all the evidence the conclusion of the circuit court that there was such fraud and bribery in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, cannot be disturbed.

It is insisted for appellant that the court erred in allowing Ball to amend his petition and charge corruption, fraud and bribery by Green in the other precincts of the county outside of Lynch, and that the circuit court improperly opened the ballot boxes and recounted the

ballots. It is insisted by Ball that the answer of Green to his petition was insufficient, in that some of the allegations of the petition were not sufficiently traversed; but it is unnecessary to consider either of these questions under the view of the case we have above indicated, for their decision would have no effect on the result of the case.

The judgment is affirmed on the original and on the cross appeal. Whole court sitting.